IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARCEL BROWN** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 05-1130 |
| | : | |
| **PAULA BROWN, et al.** | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                             **March 10 , 2008**

Plaintiff Marcel Brown ("Plaintiff") brought this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against ex-Mayor Paula Brown, Chief of Police Robert Smythe, Police Officer Richard Gibney, Police Officer Kevin Wiley (collectively the "Individual Defendants"), and Darby Borough, alleging violations of her rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. She also alleged violations of her common law rights.

On April 12, 2006, the Court dismissed all of Plaintiff's claims except her Fourth Amendment claims against the Individual Defendants, her Eighth Amendment claims against the Individual Defendants, and her common law claims against the Individual Defendants in their individual capacities. Now before the Court are the Motions for Summary Judgment of Defendant Paula Brown ("Brown") and Defendants Robert Smythe ("Smythe"), Richard Gibney ("Gibney"), and Kevin Wiley ("Wiley"). For the reasons that follow, Defendants' Motions will be granted in part and denied in part.[1]

---

[1] Although Defendants have moved for summary judgment on all remaining claims, the only claims Plaintiff addresses in her Opposition to Defendants' Summary Judgment Motions are: (1) her Fourth Amendment claims for false arrest and false imprisonment against Defendants Brown, Gibney, and Wiley; (2) her Fourth Amendment claims for malicious prosecution against Defendants Brown, Gibney, and Wiley; (3) her Fourth Amendment excessive force claims against Defendants Gibney and Wiley; (4) her Eighth Amendment excessive bail claim against Defendant Brown; and (5) her state law claims for false arrest and malicious prosecution against Defendants Brown, Gibney, and Wiley. Accordingly, she has failed to establish a genuine issue

**I. BACKGROUND**

On March 9, 2001, Plaintiff purchased a restaurant/tavern (the "Bar") located in Darby, Pennsylvania from Leonard King. See Deposition of Marcel Brown ("Pl's Dep.") at 16, 47, attached as Exhibit A to Plaintiff's Opposition to Defendants' Motions ("Opposition"). Although Plaintiff's Complaint contains allegations regarding Individual Defendants that date back several months prior to her purchase, the remaining claims in her case all arise out of her arrest at the Bar on March 16, 2003. See id. at 106, 133. That night, Plaintiff was in the back room of the Bar when a fight broke out. See id. at 113. Thereafter, a 911 call was placed from the Bar's phone reporting that a gun had been fired inside the Bar. See id. at 126-28; see also Computer-Aided Dispatch Report, attached as Exhibit L to Opposition. Defendants Gibney and Wiley, along with other local police officers, responded to the radio dispatch advising of the shooting. See Deposition of Richard Gibney ("Gibney Dep.") at 30, attached as Exhibit G to Opposition; Deposition of Kevin Wiley ("Wiley Dep.") at 19, attached as Exhibit K to Opposition.

After arriving at the bar separately, both Gibney and Wiley questioned Plaintiff regarding the events that had transpired that night. See Pl's Dep. at 125-26; Gibney Dep. at 38-39; Wiley Dep. at 22. The parties disagree as to what was said during the questioning. Plaintiff contends that she told Wiley she did not know anything about a 911 call from the Bar's phone. See Pl's Dep. at 126, 130-31. She further contends that she told the officers that she had arrived at the Bar ten minutes before the police, that she "didn't hear any shooting in the bar," and that "[i]t could have been balloons popping." Id. at 130-31. She denies that she told either officer that she

---

of material fact with respect to her other remaining claims, including <u>all</u> claims against Defendant Smythe, and summary judgment is appropriate. See Ankele v. Hambrick, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003) (finding that a plaintiff who fails to respond to arguments regarding particular claims in a summary judgment motion has waived those claims).

placed a 911 call from a cell phone. Id. at 128-29. In contrast, Wiley alleges that Plaintiff told him that there had been a fight in the Bar but not a shooting, and that she had called 911 from her cell phone to report a fight only. See Wiley Dep. at 22, 26-28. After being told that she had not placed the 911 call from the Bar, Wiley called the dispatcher regarding the initial 911 call and was told again that there had been a call from a female by the name of Marcy Brown from the business line of the Bar. See id. at 27. Defendant Gibney similarly testified that Plaintiff told the police she made the 911 call from her cell phone, and that there was no shooting. See Gibney Dep. at 38-39, 46. However, when she gave him her cell phone, there was not a call to 911 in the phone log. See id. at 46. In addition, he testified that she was laughing during the questioning and told him that a balloon might have popped. See id. at 47.

Gibney further alleges that during the course of questioning, Plaintiff told the police that the Bar had a camera that either was not turned on or was not working that night, but that the camera did have a videotape in it. See id. at 39-40. Wiley went down to the basement to check the camera, but there was no videotape in the machine. See Wiley Dep. at 32; Gibney Dep. at 40. Moreover, Gibney and Wiley allege that while they were investigating the shooting, a Bar employee was caught kicking a shell casing on the dance floor. See Wiley Dep. at 30; Gibney Dep. at 42. However, Wiley acknowledges that he never heard Plaintiff direct the employee to clean the dance floor or to hide evidence. See Wiley Dep. at 30-31, 34.

Wiley alleges that Plaintiff was uncooperative during questioning, avoided or ignored his questions, seemed concerned about the police presence in the Bar, and asked how long the police were going to be there. See id. at 23-24, 28. Gibney makes similar assertions, claiming that Plaintiff stated she did not want the police at the Bar because she was trying to run a business and that the incident seemed like "a big joke to her." Gibney Dep. at 42, 45-46. Because he and

3

Gibney believed Plaintiff was being misleading and lying to the police, Wiley arrested her, handcuffed her, and took her out of the Bar. See Pl's Dep. at 133; Gibney Dep. at 46, 54; Wiley Dep. at 37. She was charged with unsworn falsification to authorities, in violation of 18 Pa. Cons. Stat. Ann. § 4904; making false reports to law enforcement authorities, in violation of 18 Pa. Cons. Stat. Ann. § 4906; tampering with or fabricating physical evidence, in violation of 18 Pa. Cons. Stat. Ann. § 4910; and hindering apprehension or prosecution, in violation of 18 Pa. Cons. Stat. Ann. § 5105. See Police Criminal Complaint, attached as Exhibit C to Opposition.

At a preliminary hearing, Magisterial District Judge Thomas Lacy dismissed two of the charges, but held Plaintiff over for trial on the false reports to authorities charge and the hindering apprehension or prosecution charge. See Transcript of Proceedings dated June 25, 2003 at 60-61, attached as Exhibit J to Opposition; Criminal Division Docket, attached as Exhibit DS-2 to the Motion for Summary Judgment of Defendants Smythe, Gibney, and Wiley ("Police Officers' Motion"). On April 2, 2004, following a trial, the Honorable Ann A. Osborne granted a directed verdict in favor of Plaintiff on these two remaining charges. See Transcript of Proceedings dated April 2, 2004 at 72- 4, attached as Exhibit I to Opposition.

**II. LEGAL STANDARD**

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the test is "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine the evidence in the light most

favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party moving for summary judgment bears the initial burden of showing the basis for its motion. See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). If the movant meets that burden, the onus then "shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial." Id.

**III. ANALYSIS**

In order to make out a prima facie case under Section 1983, a plaintiff must show that a person acting under color of law deprived her of a federal right.[2] Berg v. County of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000). In the instant case, Plaintiff alleges false arrest, false imprisonment, and malicious prosecution in violation of the Fourth Amendment against Defendants Gibney, Wiley, and Brown, and excessive bail in violation of the Eighth Amendment against Defendant Brown.[3] She also asserts state law claims for false arrest and malicious

---

[2]   42 U.S.C. § 1983 states in part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[3]   Plaintiff alleges excessive use of force against Defendants Gibney and Wiley in her Opposition. However, as will be discussed infra, the Court will not consider the excessive force claim because it was raised for the first time in Plaintiff's Opposition to Summary Judgment.

prosecution against all three defendants.

> **A.     False Arrest and False Imprisonment Under the Fourth Amendment and State Law**

Plaintiff alleges that Defendants Gibney, Wiley, and Brown violated her Fourth Amendment right to be free from false arrest and false imprisonment.  An arresting officer violates a person's right to be free from false arrest and false imprisonment when the officer arrests that person without probable cause.  See, e.g., Hanks v. County of Delaware, 518 F. Supp. 2d 642, 647 (E.D. Pa. 2007).[4]  Probable cause exists if the facts and circumstances within the arresting officer's knowledge at the moment of the arrest are sufficient to warrant a reasonable person's believing that an offense has been or is being committed.  See, e.g., Pittman v. McDuffy, 240 Fed. Appx. 524, 526 (3d Cir. 2007) (citations omitted); Cherry v. Garner, 2004 WL 3019241, at *9 (E.D. Pa. Dec. 30, 2004) ("[T]he proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." (quoting Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988))).  "[T]he evidentiary standard for probable cause is significantly lower than the standard which is required for conviction."  Wright v. City of Philadelphia, 409 F.3d 595, 602 (E.D. Pa. 2005).  As long as there is probable cause to support one of the charges for which Plaintiff is arrested, her false arrest claim will be defeated.  See Johnson v. Knorr, 477 F.3d 75, 85 (3d Cir. 2007).

---

[4] "Pennsylvania state law false arrest claims and federal constitutional false arrest claims are co-extensive both as to elements of proof and elements of damages."  Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 869 (E.D. Pa. 2000) (citing Patzig v. O'Neil, 577 F.2d 841, 851 (3d Cir. 1978)).  Therefore, the Court will analyze Plaintiff's federal constitutional false arrest and false imprisonment claims, and the conclusions will apply equally to her state law claims.

The Third Circuit has stated that the question of probable cause in a Section 1983 case generally is one for the jury. Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998). However, summary judgment is appropriate on Plaintiff's false arrest and false imprisonment claims if, taking all of her allegations as true and resolving all inferences in her favor, the Court finds that a reasonable jury could not find a lack of probable cause for her arrest. Taylor v. City of Philadelphia, 144 Fed. Appx. 240, 244 (3d Cir. 2005). The Court must examine the "totality of the circumstances" to determine if there was probable cause for Plaintiff's arrest. Pittman, 240 Fed. Appx. at 527.

        **1.**        **Defendants Gibney and Wiley**

Gibney and Wiley argue that Plaintiff's false arrest and imprisonment claims against them should be dismissed because they had probable cause for her arrest. Since the parties disagree as to what transpired on the evening of March 16, 2003, the Court must view the facts in the light most favorable to Plaintiff as the non-moving party. Accordingly, the Court must assume that Plaintiff told the officers that she was unaware of a 911 call, had not made the call herself, and had just arrived at the Bar. Even assuming these facts to be true, however, under the totality of the circumstances, the Court finds that Gibney and Wiley had probable cause to arrest Plaintiff, at least with respect to the charge of hindering apprehension or prosecution under 18 Pa. Cons. Stat. Ann. § 5105.

Section 5105 provides that "a person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for [a] crime ... he ... provides false information to a law enforcement officer." 18 Pa. Cons. Stat. Ann. § 5105. At the time of Plaintiff's arrest, Gibney and Wiley were responding to a report of a shooting at Plaintiff's Bar. They had been told by the police dispatcher that a 911 call had been placed by someone with

7

Plaintiff's name, and had reconfirmed that information with the dispatcher after Plaintiff denied making the call during questioning.[5] Moreover, they had reports of a shooting, but Plaintiff suggested that rather than a shooting, someone might have had heard balloons popping. Based on the information known to the officers at the time, it was not unreasonable for them to conclude that Plaintiff was lying in order to cover up a crime. Accordingly, since Gibney and Wiley had probable cause to arrest Plaintiff on at least one of the charges, summary judgment in their favor on the false arrest and imprisonment claims is appropriate.[6]

### 2. Defendant Brown

Brown argues that summary judgment on the false arrest and false imprisonment claim against her is appropriate because Plaintiff has failed to establish that she was personally involved in the March 16, 2003 arrest. See Motion for Summary Judgment of Defendant Brown

---

[5] During Plaintiff's trial, she established that the 911 caller never identified herself as "Marcy Brown," and that the person who answered the call likely assumed the call had been placed by Plaintiff based on an electronic system that automatically generates the name of the owner of the phone line from which a 911 call is made. See Transcript of Proceedings dated April 2, 2004, at 21-41. However, Gibney and Wiley were told by the dispatcher that the call was placed by Plaintiff, and therefore, based on information available to them at the time, it was not unreasonable for them to assume that Plaintiff had made the call. Cf. Wright, 409 F.3d at 603 ("Although [the officers] may have made a mistake, their belief was not unreasonable in light of the information the officers possessed at the time.") (citation omitted).

[6] In her Opposition, Plaintiff argues that Gibney and Wiley knowingly made material misrepresentations in the Affidavit of Probable Cause, and therefore, that summary judgment is not appropriate. See Opposition at 21-24. However, Plaintiff was legally arrested for purposes of the false arrest and false imprisonment claims at the scene *prior* to the preparation of the Affidavit of Probable Cause. See Estevez v. City of Philadelphia, 2007 WL 707358, at *4 (E.D. Pa. Mar. 2, 2007) (dismissing a false arrest claim against the officer who filled out an arrest report where the plaintiff was arrested prior to the arrest report being prepared). Moreover, "improper motives are irrelevant to the question of whether objective facts available to the [police] at the time reasonably could have led then to conclude [Plaintiff] had committed an offense." Taylor, 144 Fed. Appx. at 245. Therefore, the Court need not examine the Affidavit of Probable Cause or delve into whether Gibney and Wiley knowingly made material misrepresentations in order to determine if there was probable cause on at least one of the charges at the time they made the arrest.

at 11-13. Liability cannot lie in a Section 1983 action absent personal involvement on the part of a defendant, and respondeat superior is generally insufficient to show personal involvement. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Plaintiff has offered no evidence that would establish Brown's personal involvement in her arrest.[7] Moreover, Gibney and Wiley, the arresting officers, both testified that Brown did not play a role in the arrest. See Gibney Dep. at 72 (testifying that he has never spoken to Brown about Plaintiff); Wiley Dep. at 47 (responding "[a]bsolutely not" when asked whether Brown had any involvement or influence in the decision to arrest Plaintiff). Accordingly, summary judgment on the false arrest and imprisonment claim is appropriate as to Defendant Brown.

### B. Malicious Prosecution Under the Fourth Amendment and State Law

Plaintiff alleges that Gibney, Wiley, and Brown further violated her Fourth Amendment rights by maliciously prosecuting her. In order to prove a malicious prosecution claim under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the proceeding ended in the plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the proceeding. Pittman, 240 Fed. Appx. at 526 (citing Johnson, 477 F.3d at 81-82). Thus, as with Plaintiff's false arrest and false imprisonment claims,

---

[7] As will be discussed infra, Plaintiff contends that Brown made a call to the bail clerk regarding her bail. This alleged call, however, followed her arrest, and therefore, does not establish Brown's involvement in the arrest itself. Plaintiff also alleges that she heard a radio call to the police station on the night of her arrest during which Brown said "book her." See Pl's Dep. at 141. However, assuming Plaintiff did overhear such a radio call, it too would have occurred after she already had been arrested and does not establish that Brown was involved in her arrest.

9

the Court must examine whether there was probable cause to arrest her. Id. The fact that two of the charges against Plaintiff were dismissed and she was acquitted on the remaining two charges does not alone satisfy her burden of demonstrating that probable cause was lacking. See, e.g., Smith v. Snell, 1996 WL 334379, at *1 (E.D. Pa. June 13, 1996). However, unlike a false arrest claim, for the Court to grant summary judgment on a malicious prosecution claim, it must find that there was probable cause for charging all of the crimes brought against Plaintiff. Johnson, 477 F.3d at 85 (remanding with instructions for the district court to consider probable cause separately for each claim alleged to have been maliciously prosecuted).[8]

### 1.     Defendants Gibney and Wiley

In their Motion, Gibney and Wiley do not dispute that Plaintiff has satisfied the first, second, and fifth elements of her malicious prosecution claims. However, they argue that summary judgment on those claims is appropriate because Plaintiff has not established lack of probable cause under the third element since two of the charges went to trial. See Police Officers' Motion at 4. They also argue that, under the fourth element, Plaintiff has not established any ill motive or malicious intent on their part in initiating the criminal proceedings. See Police Officers' Motion at 5. Finally, they argue that even if Plaintiff can establish a violation of her right to be free from malicious prosecution, they are entitled to qualified immunity on these claims.

Gibney and Wiley have set forth sufficient facts to establish probable cause for Plaintiff's

---

[8] "[W]e do not question the rule that there need not have been probable cause supporting charges for every offense for which an officer arrested a plaintiff for the arresting officer to defeat a claim for false arrest ... However, a cause of action for malicious prosecution may be based on the prosecution of more than one charge, and the validity of the prosecution for each charge comes into question inasmuch as the plaintiff was subject to prosecution on each individual charge which, as we have noted, is likely to have placed an additional burden on the plaintiff." Johnson, 477 F.3d at 85.

arrest on the hindering apprehension or prosecution charge. However, with respect to the unsworn falsification to authorities, false reports to law enforcement authorities, and tampering with or fabricating physical evidence charges, there remain disputed issues of material fact with respect to both the probable cause element and the malicious intent element.[9] Assuming that the events of March 16, 2003 occurred the way Plaintiff testified (i.e., that she did not make the 911 call and never told the police that she made the call from her cell phone) and that the Affidavit of Probable Cause was falsified, the Court cannot conclude at this time that no reasonable jury could find a lack of probable cause on these three charges.[10] Moreover, assuming, as Plaintiff has alleged, that Gibney and Wiley lied in the Affidavit of Probable Cause that led to the initiation of criminal proceedings on these three charges, Plaintiff may be able to establish the malicious intent needed to support a malicious prosecution claim.

The Court also cannot conclude that Gibney and Wiley are entitled to qualified immunity. "Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." James v. York County Police Dep't, 160 Fed. Appx. 126, 134 (3d Cir. 2005). In order to determine whether a defendant is entitled to immunity, the Court must engage in a two-part inquiry: first, whether the challenged conduct amounts to a

---

[9] A charge of unsworn falsification to authorities requires the offender to make a written false statement to authorities. See 18 Pa. Cons. Stat. Ann. § 4904. A charge of false reports to law enforcement authorities requires the offender to report to law enforcement authorities an offense or other incident knowing that it did not occur. See 18 Pa. Cons. Stat. Ann. § 4906. A charge of tampering with or fabricating physical evidence requires the offender to alter, destroy, conceal, or remove any record, document, or thing with intent to impair its verity or availability in such proceeding or investigation. See 18 Pa. Cons. Stat. Ann. § 4910.

[10] For example, none of the parties addressed in their papers whether either the missing videotape or the employee's kicking of the bullet might have provided the officers with enough probable cause to initiate criminal proceedings against Plaintiff on the tampering with or fabricating physical evidence charge, even though this charge was later dismissed.

constitutional violation, and second, whether the right was "clearly established" at the time of the alleged deprivation. See Saucier v. Katz, 533 U.S. 194, 202 (2001). With respect to the second prong, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.

The right to be free from malicious prosecution was a clearly-established right at the time of Plaintiff's arrest. See, e.g., Molina v. City of Lancaster, 159 F. Supp. 2d 813, 820 (E.D. Pa. 2001). Therefore, if Plaintiff is able to establish a violation of that right, then Gibney and Wiley are not entitled to qualified immunity. Accordingly, summary judgment on the malicious prosecution claims against Gibney and Wiley will be denied.[11]

### 2. Defendant Brown

As with her false arrest and false imprisonment claims, Plaintiff has failed to establish any evidence of personal involvement on the part of Brown in Plaintiff's criminal prosecution.[12] Accordingly, summary judgment on the malicious prosecution claim is appropriate with respect to Brown.

---

[11] In order to prevail on a common law action for malicious prosecution in Pennsylvania, a plaintiff must prove: (1) that the defendants instituted proceedings without probable cause; (2) that the defendants acted with malice; and (3) that the proceedings were terminated in favor of the plaintiff. Mitchell v. Guzick, 138 Fed. Appx. 496, 499 (3d Cir. 2005) (citing Hugee v. Pa. R.R. Co.,101 A.2d 740, 742 (1954)). Since the Court finds that there is a genuine issue of material fact with respect to probable cause and intent, summary judgment also is not appropriate on Plaintiff's common law malicious prosecution claims.

[12] As previously mentioned, Plaintiff claims to have overheard a call on a walkie-talkie between Gibney, Wiley, and Brown after she was arrested and taken to the police station. See Pl's Dep. at 141-42. However, Plaintiff was not even in the same room as the radio call and could not recall what was said on the call other than perhaps "book her." Id. at 141. Since both Wiley and Gibney testified that Brown was not involved in the decision to arrest or prosecute Plaintiff, her vague testimony is not sufficient to create a genuine issue of material fact regarding Brown's personal involvement in Plaintiff's prosecution.

### C. Excessive Bail Under the Eighth Amendment

Plaintiff next contends that Brown played a role in ensuring that Plaintiff had to pay excessive bail following her March 16, 2003 arrest. The Eighth Amendment provides that a defendant in a criminal case is entitled to reasonable bail. A claim for excessive bail is cognizable under Section 1983. Harrison v. Abraham, 1997 WL 256970, at *20 (E.D. Pa. May 16, 1997) (citation omitted). In determining whether a plaintiff's right to reasonable bail has been violated, the Third Circuit examines whether the defendant has the authority to set bail and whether the defendant's involvement in the bail decision manipulated, helped to shape, or exercised significant influence over the bond decision.[13] See James, 160 Fed. Appx. at 133 (noting that authority to set bail is not determinative) (citing Wagenmann v. Adams, 829 F.2d 196, 211 (1st Cir. 1987)).

Plaintiff does not contend that Brown had the authority to *set* her bail; however, she argues that she has created a genuine issue of material fact as to whether Brown improperly *influenced* the setting of her bail. See Opposition at 26. Plaintiff conceded at her deposition that she never personally heard Brown request high bail for her. See Pl's Dep. at 140-41. Thus, her only "evidence" that Brown influenced the bail decision is her allegation that there was animosity between them and her testimony that the bail clerk "said he got a phone call from Paula Brown, the ex mayor of Darby, [who] said set the bail as high as possible." Id. at 139. Even assuming that Plaintiff's allegations regarding the animosity between her and Brown are true, that fact alone does not establish that Brown influenced her bail. Her only other evidence, her testimony regarding the bail clerk's statement, is hearsay offered for the truth that Brown influenced the

---

[13] Under the Pennsylvania Rules of Criminal Procedure, only "the district justice magisterial district judge, magistrate, Philadelphia bail commissioner, [and] the judge with jurisdiction over the case" have the authority to set, modify, revoke, or deny bail. Pa. R. Crim. P. 103.

13

bail decision. However, Plaintiff has no personal knowledge that Brown made this statement, and she has not proffered the testimony of the bail clerk.[14] Therefore, the Court may not consider this testimony. See, e.g., Easton v. Bristol-Myers Squibb Co., 289 F. Supp. 2d 604, 613 (E.D. Pa. 2003) ("The only evidence [the plaintiff] provides is her own assertion that [a third party] told her that defendant had made defamatory statements. To the extent that this evidence is based on hearsay, it is inadmissible and cannot be relied upon to overcome a summary judgment motion."); Synygy, Inc. v. Scott-Levin, Inc., 51 F. Supp. 2d 570 575-76 (E.D. Pa. 1999) (refusing to consider hearsay statements where the plaintiff had not presented any direct testimony regarding the statements). Moreover, even assuming Brown contacted the bail clerk, Plaintiff has not established that the judicial officer who ultimately set bail ever heard of, or was influenced by, that conversation.[15] Accordingly, Plaintiff has not created a genuine issue of material fact with respect to her Eighth Amendment claim against Brown, and summary judgment will be granted.

### D. Excessive Force Under the Fourth Amendment

Finally, Plaintiff argues for the first time in her Opposition that Gibney and Wiley used excessive force in violation of the Fourth Amendment during her March 16, 2003 arrest. In her Complaint, Plaintiff did not raise a Fourth Amendment excessive force claim or even include allegations regarding the use of force during her arrest, and she has not sought to amend the Complaint to add such allegations.[16] The Third Circuit has noted that "District Courts have

---

[14]  Plaintiff admitted during her deposition that she did not hear the alleged phone call between the bail clerk and Brown. See Pl's Dep. at 139.

[15]  At her deposition, Plaintiff was unable to recall who set her bail. See Pl's Dep. at 249-50.

[16]  It is evident that Gibney and Wiley were not on notice of a Fourth Amendment excessive force claim because in their Motion, they state that the only claims remaining

14

broad discretion to disallow the addition of new theories of liability at the eleventh hour." Carr v. Gillis Assoc. Indus., Inc., 227 Fed. Appx. 172, 176 (3d Cir. 2007) (citing cases that disallow the plaintiff from raising claims for the first time in opposition to a summary judgment motion). Accordingly, the Court will not consider Plaintiff's excessive force arguments. See, e.g., Kaniuka v. Good Shepherd Home, 2006 WL 2380387, at *11 (E.D. Pa. Aug. 15, 2006) ("Courts in this and other districts have held that they need not address claims that are raised for the first time in opposition to a motion for summary judgment." (citations omitted)); Speziale v. Bethlehem Area Sch. Dist., 266 F. Supp. 2d 366, 371 n.3 (E.D. Pa. 2003) ("Plaintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in responsive papers.").

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment will be granted in part and denied in part.  An appropriate order follows.

---

following the Court's decision on the Motions to Dismiss are "federal claims of Unlawful Arrest, Excessive Bail, Deprivation of Liberty and Property without Due Process and several state law claims as follows: Assault, False Arrest and Imprisonment, Intentional Infliction of Emotional Distress, Negligence, Trespass, Malicious Prosecution and Abuse of Process."  Police Officers' Motion at ¶ 4.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCEL BROWN | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 05-1130 |
| | : | |
| PAULA BROWN, <u>et al.</u> | : | |

**ORDER**

**AND NOW**, this   10th   day of March, 2008, upon consideration of Defendant Paula Brown's Motion for Summary Judgment (docket no. 20), the Motion for Summary Judgment of Defendants Robert Smythe, Richard Gibney, and Kevin Wiley (docket no. 21), Plaintiff's Opposition thereto (docket no. 29), and Defendant Paula Brown's Reply (docket no. 30), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motions are **GRANTED in part and DENIED in part**:

(1)   All remaining claims against Defendants Smythe and Brown are **DISMISSED**.

(2)   All remaining claims against Defendants Gibney and Wiley are **DISMISSED** except for Plaintiff's Fourth Amendment and state law malicious prosecution claims, which shall continue.

BY THE COURT:

  S/ BRUCE W. KAUFFMAN  

BRUCE W. KAUFFMAN, J.